THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY YOUNG, Defendant-Appellant.

(No. 55516;

First District—May 30, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Edward Downs and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Richard A. Jalovec, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

After a bench trial defendant was convicted for the offense of attempted rape and sentenced to a term of 2 to 5 years. He appeals and presents the following contentions:

1. The Court erred in denying defendant's motion for a continuance.
2. Defendant's physical condition prevented him from making a knowing jury waiver, assisting his counsel and effectively confronting the witnesses.
3. The record fails to establish the specific intent to commit rape.
4. The pre-trial identification of defendant by the victim was so suggestive that it was a denial of due process.
5. The failure to obtain a waiver from defendant of his right to be assisted by counsel during his identification was a violation of his constitutional rights.

*OPINION*

■■ Defendant's first contention stems from events which transpired on September 2, 1970, the date set for trial. When defendant's case was called, defense counsel advised the Court that his client would be unable to appear that morning due to a conflicting hearing in Boys Court. The Court was advised that defendant would be present that afternoon. The matter was then recessed until 1:30 P.M. At 2:00 P.M. the case was again called, and defense counsel advised the Court that defendant was now present, but that counsel had other cases pending and desired a continuance. He stated he did not have "these problems when this case was set for trial." The motion for continuance was denied. We believed that the chronology of the odyssey of this case as it progressed to its day of disposition reveals more than adequate cause for the Court's ruling. The date of the crime and arrest of defendant was April 11, 1969. The indictment was returned on June 19, 1969, and arraignment was had on June 26, 1969. The matter was then up on 23 different court dates, 11 of which were set expressly for trial. The case was continued on "Motion of Defendant" seven times, "By agreement of the parties" 13 times, "Order of the Court" twice and on one occasion on motion of the prosecution. It is noted that September 2, 1969 was set as a day certain for trial. In view of the foregoing, and absent any assertion of substantial

mitigating factors, we find absolutely no merit to this initial contention. ■■ Defendant's second contention is that, due to defendant's physical condition, he was unable to make a knowing jury waiver, assist his counsel or effectively confront his accusers. The only source in the record to support this contention is defense counsel's utterances, which were addressed to the Court after the prosecution had rested its case in chief. At this juncture of the proceedings, defense counsel requested that the case be recessed until the following morning at 9:30 A.M. In support of this request, he stated the following:

"Your Honor, the defendant, Roy Young, informed me that he has been in the hospital for the last few days in the jail. Incidentally, the charge that he was charged with was dismissed this morning, (The latter statement is in error. At the subsequent hearing on aggravation and mitigation it was revealed that defendant was arrested on August 14, 1970 and charged with battery, having punched, knocked down and kicked his victim. He was in jail pending his trial on that charge and on September 2, 1970, the day his present trial commenced, he pleaded guilty to that battery charge and was sentenced to 20 days considered served and came to the Criminal Court at 1:30 for trial on the indictment at bar). Anyway, he is filled with anti-biotics. He has a difficult time walking and a difficult time talking. I think in light of the fact that he has these difficulties, his ability to testify *at this time* is somewhat hampered." (Emphasis supplied.)

The Court acceded to defendant's request. When the case was called the following day, defense counsel approached the bench and said, "The defense at this time would like to proceed with this case." Three defense witnesses were then called, including defendant. On the basis of the foregoing excerpts from the record, we must conclude that there is no merit to defendant's second contention.

Defendant's third contention is that the evidence failed to establish a specific intent to commit rape. A review of all the evidence pertinent to this element is necessary.

■■ The complainant testified that just after 9:00 P.M. on April 11, 1969, she was on her way home from a beauty school and was walking south on Wood Street in the middle of the 6400 block. Defendant emerged from a gangway, put his arm around her neck and told her that he had a knife. When she commenced to scream, he forced her to walk into an alley. She continued screaming and fighting, during which time he asked if she had any money. She responded that she had $2.00 in her purse and that he should take it and leave her alone. He responded that he did not want her money, he wanted "something else." He put his hands on her mouth and dragged her into the alley, where he directed

her to lie down in a space between adjoining garages. She refused to lie down, whereupon he punched and slapped her and knocked her to the ground, threatening to kill her if she continued to scream. He sat on top of her and tried to pull her dress up. All this time she was fighting him and screaming. He knocked her head against the base of a lamp post, which had a "very bright light attached." The lighting conditions were good, and she could see his face. Defendant told her he heard someone coming and she should pull in towards the garage. When she refused, and continued screaming and fighting, defendant fled. She got up, ran down the alley and into the street, where she encountered a police car. She related the events to the police officers, and they ran down the alley in search of the assailant. Evidence was also introduced of a prior assault by defendant, which occurred on the same day at approximately the same time and location. Another woman was returning from a grocery store to her home when defendant grabbed her by the shoulder, placed a knife in her ribs, took her into the dark alley and ordered her to remove her clothing. When she refused, he tore at her clothes and knocked her down. She attempted to flee, but was grabbed again. Eventually, she eluded defendant and ran from the alley.

While other testimony was introduced, little of it bore on the issue of specific intent. The other witnesses did confirm that the complainant was cut, disheveled and hysterical immediately after the incident. Also, defendant's knife was recovered and introduced into evidence. Defendant testified and denied each of these allegations. Based on the totality of the evidence, we believe that there was considerable evidence of a specific intent to commit rape. In *People v. Moore*, 77 Ill.App.2d 62, 66-67, 222 N.E.2d 142, a case with facts remarkably similar to those at bar, the Court made the following observations:

"Despite the fact that the initial assault took place in daylight and on a public street the intention behind it can be inferred from the acts of the defendant. His purpose was not money; he did not snatch her pocketbook when he accosted her nor attempt to rob her later. He seized the complainant by the throat and dragged her to a place of concealment. There, away from passersby, he tried to overcome her resistance by force. He did not desist when she fought him off. He kept mauling her when she hit him with the few things she had at hand, her purse, her books, her shoe. His was not just an amorous advance. He did not claw at her clothing just to kiss her lips; he did not threaten to kill her just to feel her breasts. By this demand that she give him 'some' it is clear what he meant and he took substantial steps toward obtaining it. If his purpose had been accomplished he would have raped his victim."

We conclude that there is no merit to defendant's third contention.

■■ The fourth contention challenges the constitutionality of the Court's admission of evidence concerning complainant's pre-trial identification of defendant. At the time of the identification defendant lay alone in a hospital bed in critical condition, having been shot by a police officer near the scene of the crime. Although the practice of showing suspects singly to identifying witnesses is generally condemned, exigent circumstances occasionally arise which justify such a procedure. (*Stovall v. Denno* (1967), 388 U.S. 293.) Courts have repeatedly upheld single show-ups at the scene of the crime, (*People v. Young,* 46 Ill.2d 82, 263 N.E.2d 72; *People v. Newell,* 48 Ill.2d 382, 268 N.E.2d 17; *People v. McMath,* 45 Ill.2d 33, 256 N.E.2d 835), and in the hospital room of an incapacitated victim. (*Stovall v. Denno, supra; People v. Owens,* 126 Ill.App.2d 379, 261 N.E.2d 785.) In *People v. Speck,* 41 Ill.2d 177, 242 N.E.2d 208 (reversed on other grounds (1971), 403 U.S. 946, the Illinois Supreme Court upheld the admission of evidence of an identification which took place in the hospital room of the incapacitated defendant. We therefore hold that the identification in the case at bar was not so *unnecessarily* suggestive as to deny defendant his constitutional rights.

Defendant's fifth contention, that his constitutional right to the assistance of counsel was violated by the absence of counsel during the pre-trial identification, is directly refuted by *People v. Palmer,* 41 Ill.2d 571, 244 N.E.2d 173.

We affirm.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.