THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS J. SMITH, Defendant-Appellant.

(No. 57114;

First District (2nd Division)—March 26, 1974.

James J. Cutrone, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Patricia Campbell Bobb, and Stephen J. Broussard, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court.

Defendant, Dennis Smith, was charged with attempt armed robbery[1] and aggravated battery.[2] After a jury trial he was found guilty of both offenses and was sentenced to concurrent terms of 4 to 11 years in the penitentiary. Defendant appeals and urges reversal of his convictions on the grounds that:

1. The victim's in-court identification of defendant was tainted by suggestive show-up and lineup procedures and defendant's motion to suppress the in-court identification was erroneously denied;
2. Impermissible hearsay testimony regarding the victim's out-of-court identification of defendant was allowed into evidence;
3. Defendant's right to cross-examine his accuser was unduly restricted;
4. Evidence of a gun and cartridges was erroneously introduced into evidence when no connection between the evidence and the offenses was shown; and
5. The evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

On March 25, 1971, at approximately 6 P.M., Bertha Adams was walking east on 61st Street in Chicago. She noticed three boys walking behind her, and as she turned to enter a courtyard of a building at 705 East 61st Street, the three boys passed her. She observed the shortest of the three follow her into the courtyard, and heard a voice behind her say "Give me your purse or I will shoot you." Mrs. Adams turned to her left and looked directly at the offender. He repeated his statement and Mrs. Adams then screamed and began to run. The offender shot her in the hip and she fell. Neighbors called police who arrived on the scene and transported the victim to Billings Hospital.

---

[1] Ill. Rev. Stat. 1971, ch. 38, par. 8—4.
[2] Ill. Rev. Stat. 1971, ch. 38, par. 12—4(b)(1).

At trial Mrs. Adams identified defendant as the man who approached her, asked for her purse and shot her. She also testified that she identified defendant by his face and his voice when he was brought into her hospital room. On cross-examination she testified that she had never seen defendant prior to the incident, and that she could not describe the other two boys at the scene. She stated that she did not know how long she observed the offender's face, and denied stating in previous testimony that she observed the offender for no more than 10 seconds. She also recalled that she described the offender to police as a Negro wearing a black leather jacket. She did not tell police that the jacket was waist-length or that the offender was a Negro with a dark complexion. She did not describe his face or hair style, and she did not see the gun held by him. In the hospital the officers told her that they had a man for her to look at, and then they brought in defendant. She recognized defendant's face.

Detective Lawrence Copeland testified that he arrived at Billings Hospital to investigate the crimes at approximately 7 or 8 P.M. on March 25, 1971. The victim was lying on a bed and a lineup was conducted in the hospital emergency room. Two Negro policemen were placed in the lineup with defendant, and the victim identified defendant. Two or three days after the incident, Detective Copeland returned to the hospital to retrieve the bullet removed from Mrs. Adams' body, but he was informed by hospital personnel that the bullet had been lost.

Detective Robert Krueger, Officer Copeland's partner, testified regarding the lineup at the hospital. His testimony was substantially identical to Copeland's. He added that the gun dropped by defendant prior to his arrest was shown to Mrs. Adams who could not identify it as the gun wielded by her attacker.

Officer Richard Hutchings, who responded to the call regarding the shooting and who also arrested defendant, testified that the victim described the offender as a "male Negro, dark-skinned, approximately 18, wearing a black, waist-length leather jacket." He and his partner began a search of the area, and after patrolling for approximately ½ hour, he observed defendant in an alley. He observed defendant step behind a post or telephone pole and drop a white object. The officer left his car and defendant moved toward 63rd Street. The officer proceeded to the post and found a small, .22-caliber revolver with one expended cartridge. He chased defendant who had begun to run, and he apprehended defendant in another alley. The officer told defendant that he fit the description of a man involved in an attempt armed robbery and aggravated battery, and defendant denied any involvement in the crimes. The officer proceeded to Billings Hospital with defendant and

inquired as to the victim's condition. He then brought defendant into the victim's room whereupon the victim stated, "That is the man." On cross-examination Officer Hutchings stated that he had stopped two or three persons fitting the offender's description prior to his observation of defendant. He also recalled that defendant denied dropping a gun, and that he stated that he had been with friends between 5 P.M. and 7 P.M. that evening.

After introducing into evidence the gun, one expended cartridge and three unexpended cartridges, the State rested.

Defendant testified in his behalf that he was with friends at 884 East 64th Street from 5:30 P.M. to approximately 7:40 P.M. on the evening in question. He stated that he did not drop a gun in the alley, and that he was not running away from police when he was arrested. At the time of his arrest, at approximately 7:40 P.M., the officers did not mention the gun. He was taken to the hospital and brought into a room where Officer Hutchings asked Mrs. Adams if he was the person who had shot her. She did not speak, but shook her head. He was taken from the room and two detectives entered the room with the victim. They later exited and placed defendant in a lineup with two policemen. They were all told to say "Give me your purse or I will shoot you." The victim then identified defendant.

Tyrone Smith and Flossie Smith were called as alibi witnesses. They both testified that defendant arrived at their apartment between 3 P.M. and 4 P.M. and remained until after 8 P.M. on March 25, 1971.

In rebuttal the State recalled Officers Hutchings and Krueger. Officer Hutchings testified that he arrested defendant between 7:30 and 7:45 P.M. Officer Krueger testified that he first observed defendant at the hospital at approximatly 7:40 P.M.

The jury found defendant guilty as charged.

Defendant first contends that his motion to suppress the identification testimony of Bertha Adams should have been granted. He argues that her in-court identification was based upon suggestive pretrial identification procedures, and that therefore, he was denied due process of law.

At the hearing on the motion to suppress, defendant testified that at the show-up the victim stated "No, Sir" in response to a question whether defendant was the offender. Then three other persons were placed in the lineup with him. One of the men was black, two were white and all three were taller than defendant.

Officer Hutchings testified that he brought defendant into the emergency room, and when the victim saw him she said "This is the man." When this identification was made defendant was standing in the doorway to the room, 3 or 4 feet from the victim.

Bertha Adams testified at the hearing that she identified defendant when he was brought into her room and stood next to her bed. Later defendant repeated the words spoken during the attempt robbery and she told police that she recognized defendant by his face and voice.

The trial court then denied defendant's motion to suppress the identification testimony.

■■■ Defendant cites the case of *Stovall v. Denno*, 388 U.S. 293, in support of his argument. In *Stovall* the Supreme Court stated that "the practice of showing suspects singly to persons for the purpose of identification and not as part of a lineup, has been widely condemned." 338 U.S. 293, 302. The Court held, however, that the test to determine a violation of due process in the conduct of a confrontation depends upon the totality of circumstances surrounding that confrontation. Where a defendant proves that the identification procedure was so suggestive as to give rise to a substantial likelihood of irreparable misidentification, a deprivation of due process is established and the identification testimony must be suppressed. (*Neil v. Biggers*, 409 U.S. 188; *People v. Johnson*, 45 Ill.2d 38, 257 N.E.2d 3.) Hospital show-ups per se cannot be considered to be so suggestive as to give rise to a substantial likelihood of misidentification. Hospital show-ups have been upheld where the physical condition of either the victim or the accused renders such a confrontation imperative (*Stovall v. Denno, supra; People v. Young*, 6 Ill.App.3d 119, 285 N.E.2d 159), or where the victim's excellent opportunity to view the defendant during the commission of the crime negates the likelihood of misidentification. *People v. McCorry*, 51 Ill.2d 343, 282 N.E.2d 425.

■■ In the instant case defendant argues that the hospital show-up was unnecessary in that the victim was not in critical condition. When defendant was brought to the hospital the police officers were informed that the victim was to undergo surgery for removal of the bullet. In view of these circumstances, the officers reasonably believed that an immediate identification prior to surgery was the only feasible procedure for identification. We cannot now say that the officers' determination was unreasonable.

■■ Moreover, even if we were to determine that the show-up was unnecessary, we are of the opinion that defendant was not denied due process of law. The victim was positive in her identification of defendant, and upon seeing defendant, within approximately 1½ hours of the commission of the crimes, immediately identified him as her assailant. Based upon the fact that she turned and looked directly into the offender's face, she testified that she was certain that defendant was the offender.

Defendant relies upon three factors to establish that the victim's opportunity to observe her assailant at the time of the crimes was inadequate, and that therefore, her identification of defendant necessarily was based upon the suggestive identification procedures at the hospital: (1) the record is silent as to lighting conditions at the time of the crimes; (2) the victim failed to describe the offender's facial characteristics or hair-style; and 3) the victim merely had an opportunity to briefly glance at the offender.

■■ First, the record reflects that the victim testified that it was "not dark" on the evening in question. Secondly, the failure to describe to police the facial characteristics of the offender does not affect the victim's ability to make a positive identification, but merely affects the credibility of her identification. (*People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378.) Defense counsel has indicated no features of defendant which would warrant obvious mention. Lastly, the victim did testify at the hearing on the motion to suppress that she did not look at the offender's face more than 10 seconds "because I started running." Under the circumstances and facts of this case, we cannot say that the length of time to observe the offender was insufficient, especially in view of the convincing testimony of the victim. *Cf. People v. Hudson*, 46 Ill.2d 177, 263 N.E.2d 473.

The victim had an opportunity to view defendant face-to-face for an adequate length of time, and there apparently was no variance between her description of defendant and his actual appearance. Therefore, in view of the adequate opportunity of the witness to view her assailant and the immediacy of the hospital confrontation, we do not believe that the hospital show-up led to a substantial likelihood of misidentification of defendant. Because the show-up did not result in a denial of due process, the lineup is not significant. (*People v. Triplett*, 46 Ill.2d 109, 263 N.E.2d 24, *cert. denied*, 401 U.S. 955.) Defendant's motion to suppress was properly denied.

Defendant's second assignment of error is the admission into evidence of hearsay testimony by the police officers concerning the victim's identification of defendant at the hospital. Officer Hutchings testified that the victim identified defendant when he was shown singly to the victim, and Officers Krueger and Copeland testified that the victim picked defendant from the lineup.

Although no objection was made to this testimony at trial, and this error may be considered waived (*People v. Jones*, 2 Ill.App.3d 575, 277 N.E.2d 144), hearsay identification testimony constitutes "plain error" (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a)) and requires reversal when such testimony is utilized as a substitute for courtroom identification, or

when it is utilized to strengthen a weak identification. (*People v. Rice*, 5 Ill.App.3d 18, 282 N.E.2d 526; *People v. Coleman*, 17 Ill.App.3d 421. We are greatly concerned by the State's continual use of this identification testimony, however, in view of the evidence in this case, this testimony constituted harmless error. *People v. Canale*, 52 Ill.2d 107, 285 N.E.2d 133.

Defendant's third contention is that he was denied his constitutional right to cross-examine his accuser. Specifically defendant argues that he was denied the opportunity to cross-examine the victim of the crimes as to her ability to view her assailant. On cross-examination the following colloquy ensued:

"Defense Counsel: Mrs. Adams, do you wear glasses, Ma'am?
Witness: Yes, I do.
Defense Counsel: Do you have your glasses with you today?
Witness: Yes, I do.
Defense Counsel: May I see them, please?
Prosecutor: Objection, there is no relevancy in this, Judge, * * *.
The Court: Well, I'm not certain. For the moment I will overrule your objection. If counsel does not tie it up in some way I will strike it. * * *
Defense Counsel: These glasses that you have shown me you also owned them on the 25th of March?
Witness: Yes, I own them.
Defense Counsel: And, they're bi-focals, are they?
Witness: Bi-focals.
Defense Counsel: And do you use them for anything other than reading?
Witness: No.
* * *
Defense Counsel: And you did not have them at the time of the alleged robbery?
Witness: No, I didn't. I don't wear them in the street.
* * *
Prosecutor: At this time, Judge, we are asking that the question and answer in respect to the glasses be stricken from the record.
The Court: The jury will be instructed to disregard all questions and answers with respect to eye-glasses."

■■■ Defendant correctly states the general proposition of law that where the principal issue concerns the identification of the accused, defense counsel should be given wide latitude to cross-examine the identifying witness as to his intelligence, powers of discernment and capacity

to form a correct judgment in order that the jury may determine the value of his testimony. (*People v. Morris*, 30 Ill.2d 406, 197 N.E.2d 433.) An inquiry directed to determine if the witness suffers any ocular impairment is an appropriate area of cross-examination, and the trial court erred in striking this testimony and instructing the jury to disregard it. However, from the colloquy set forth above, we are convinced that this error does not require reversal.

Defendant next assigns as error the introduction into evidence of the gun and cartridges dropped by defendant prior to his arrest. Defendant relies upon the testimony of the victim that she did not see the gun used by her assailant and was unable to describe it to police. Defendant concludes that the State's failure to connect the gun and the cartridges to the crime precludes their use as evidence.

■■■ The general rule is that physical evidence may be introduced into evidence where there is proof to connect the evidence to defendant and the crime. (*People v. Miller*, 40 Ill.2d 154, 238 N.E.2d 407, *cert. denied*, 393 U.S. 961; *People v. Gonzales*, 40 Ill.2d 233, 239 N.E.2d 783.) Moreover, where there is evidence indicating that an accused possessed a weapon at the time of the offense, a similar weapon found in his possession at the time of his arrest may be admitted against him, even though not identified as the actual weapon used by him in the commission of the crime. (*People v. Johnson*, 35 Ill.2d 516, 221 N.E.2d 497.) In the instant case the arresting officer observed defendant drop the revolver. The officer recovered the revolver, three unexpended shells, and one spent shell. It is not disputed that this evidence was sufficient to connect the gun and cartridges to defendant. The victim was shot once, and identified defendant as her assailant. Therefore, a sufficient nexus between the gun and cartridges and defendant and crimes was established. The trial court did not err in permitting the jury to consider this circumstantial evidence.

Finally, defendant urges reversal of his convictions on the ground that he was not proven guilty beyond a reasonable doubt. Defendant again maintains that the victim's identification was weak and was based upon the suggestive pretrial identification procedures. Defendant asserts that his convictions cannot stand when his alibi evidence is weighed against the limited opportunity of the victim to observe the offender.

■■ The rule in Illinois is that identification testimony of one witness is sufficient to sustain a verdict of guilty if the witness' testimony is positive and credible, and he had an adequate opportunity to observe the accused. (*People v. Solomon*, 24 Ill.2d 586, 182 N.E.2d 736; *People v. Camp*, 9 Ill.App.3d 445, 292 N.E.2d 242.) The jury in this case found that the victim was close enough to defendant for a sufficient length of

time, under adequate lighting conditions, to positively identify defendant. Inconsistencies in the testimony of the victim and the police officers were placed before the jury, and the jury found the State's witnesses to be credible, and chose not to believe defendant's alibi evidence. We cannot say that these determinations were palpably erroneous. We note that the testimony of his two alibi witnesses was inconsistent with defendant's own testimony. Finally, the identification testimony of the victim was not the sole incriminating evidence against defendant. The victim's testimony was corroborated by evidence of the gun and the spent cartridge disposed of by defendant prior to his arrest. Upon our review of the total record, we are convinced that the evidence was not so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

HAYES, P. J., and DOWNING, J., concur.