THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANNY D. SIMPSON, Defendant-Appellant.

Fourth District   No. 12978

Opinion filed June 17, 1976.

BARRY, J., dissenting.

Gaston & Goldstein, of Urbana (William R. Gaston, of counsel), for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight and Mark Lipton, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant Danny Simpson appeals from a conviction of armed robbery in a jury trial in the Circuit Court of Champaign County. The

robbery was accomplished in the Coin-o-Matic laundromat in Urbana, Illinois.

From the record it appears that two young black men robbed the laundromat and its occupants about 8:45 p.m. on December 28, 1973. The two suspects, defendant Danny D. Simpson, and Kevin Brown, were later apprehended by the police. A witness for the State, 16-year-old Byron Adams, testified that Brown and Simpson appeared at his home about 10 p.m. on December 28, 1973, and told him that they had just "hit" the laundromat. Adams testified that he was asked to go to Kevin Brown's car and retrieve a grocery sack, which turned out to contain some receipts and a gray metal cash box. The box contained approximately $135, which Brown and Simpson proceeded to split evenly, according to witness Adams, after giving Adams $5 in dimes. They also left a gun with him.

Defendant Simpson's alibi included his testimony that he arrived at Adams' home on the night in question with Raymond Carter, and that Kevin Brown was already there. Several witnesses backed up this story, but at least one witness, Adams' foster father, Elga Kyse, corroborated Adams' version that Brown and Simpson arrived together.

Three of the robbery victims, the laundry attendant Inja Kim and customers Candice Trinkle and Robert Cuppernell, also testified at the trial. Neither Kim nor Trinkle was asked to make an identification at the trial. Cuppernell was unable to positively identify Simpson at the trial as one of the robbers. Cuppernell did testify that he had identified someone in a lineup on January 9, 1974, 12 days after the robbery. Subsequent testimony and an exhibit, to which we will refer (also of which defendant complains on this appeal), show that the person identified by Cuppernell at the lineup was the defendant Simpson.

Brown and Simpson were indicted for robbery and tried jointly. Brown was convicted by a jury, but a mistrial was had as to Simpson when the jury could not reach a verdict on the charge against him. The errors now complained of occurred during Simpson's separate second trial in June 1974.

The testimony to which defendant objects involved testimony of Adams and Marian Kurata, an assistant public defender who testified concerning Cuppernell's identification of Simpson at the lineup. Adams had testified that "they" told him that "we" had just hit the laundromat. He admitted that he could not remember the conversation very well because he was not listening carefully, and that he could not remember who might have said that "we" robbed the laundry. He did not recall that Simpson said anything to that effect and said that Brown did most of the talking.

The defense objected to the testimony on the ground that if the alleged statement were made by Brown, it could be hearsay and inadmissible

against Simpson. The State, however, contended that it tended to show a joint and concerted effort by Brown and Simpson to rob the laundromat, and that in such case any statement by Brown would be admissible against Simpson under the hearsay exception for statements by co-conspirators. The court overruled defendant's objection and the testimony was admitted.

■■ The hearsay exception which allows acts and declarations of co-conspirators to be admitted as against a defendant, even when such statements and declarations are made out of the presence of defendant, is well established in the law of Illinois and other jurisdictions (*Spies v. People* (1887), 122 Ill. 1, 229, 17 N.E. 898, 12 N.E. 865), and it is not necessary that a conspiracy be actually charged nor that all the conspirators be indicted or tried (*People v. Stewart* (1st Dist. 1974), 24 Ill. App. 3d 605, 614, 321 N.E. 2d 450; *People v. Niemoth* (1951), 409 Ill. 111, 118, 98 N.E.2d 733, *cert denied*, 344 U.S. 858, 97 L. Ed. 1360, 73 S. Ct. 97). It is, however, necessary to show at least a *prima facie* case that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach another end by criminal means. (*Spies v. People*, 122 Ill. 1, 170, 212, 238-39.) It does not appear, despite the prosecutor's representation to the court, that the prosecutor made any specific attempt to show that Brown and Simpson together plotted and carried out the robbery.

■■ To be admissible, the Brown statement as to commission of the crime must be in furtherance of the common design, and not merely a narrative of what has already been done. (*Spies v. People* (1887), 122 Ill. 1, 229-37; *People v. Davis* (1970), 46 Ill. 2d 554, 558, 264 N.E.2d 140.) The statement made by Brown to the effect that he and Simpson had committed the robbery, standing alone, might be qualified under the exception contended for by the State, that statements by Brown incriminating Simpson made in Simpson's presence, could be admitted as an "implied admission" which is another exception to the hearsay rule. Under that doctrine as stated in *People v. Watson* (1966), 36 Ill. 2d 228, 236, 221 N.E.2d 645:

> "When, as here, an incriminating statement is made in the presence and hearing of the accused, and such statement is neither denied nor objected to, both the statement and the fact of his failure to deny are admissible as evidence of the truth of the accusation."

Unfortunately, on the basis of the record before us, there was no showing regarding Simpson's reaction to the supposed statement by Brown that the two of them had robbed the laundromat. Since it was not shown that Simpson was silent and made no objection or denial when one was reasonably called for, the statement of Brown could not be admissible under the implied admission exception (*People v. McCain* (1963), 29 Ill.

2d 132, 135, 193 N.E.2d 784). Adams said Brown did most of the talking and sent Adams to Brown's car to pick up the cash box.

Cuppernell had testified that he picked someone out of the lineup on January 9, 1974, and that the person so selected was holding card No. 6. The State then called the assistant public defender, Kurata, to testify that the subject identified by Cuppernell at that lineup was in fact holding card No. 8, and that such person was Simpson. The State further offered in evidence, and the court admitted, the transcript of the conversation at that lineup, as prepared by Kurata. Such transcript showed Cuppernell making a negative response to the question as to whether he had any doubt about No. 8 being one of the robbers. Defendant argues that the Kurata testimony and the transcript were inadmissible hearsay and could not be used otherwise in impeachment of the State's own witness, Cuppernell. We must view this procedure in light of the fact that it has been determined that it is error to allow a witness to testify to another person's out-of-court identification of a defendant, where the testimony, as here, is elicited by the State in direct examination during its case in chief, and where the supplementary testimony is sought to be used as a substitute for an in-court identification or to bolster a weak identification. See, e.g., *People v. Denham* (1968), 41 Ill. 2d 1, 6 241 N.E.2d 415; *People v. Smith* (1st Dist. 1974), 18 Ill. App. 3d 859, 865-66, 310 N.E.2d 734; *People v. Coleman* (1st Dist. 1974), 17 Ill. App. 3d 421, 427-28, 308 N.E.2d 364.

■■ The State had contended that the Kurata testimony and exhibit were proper to bolster an out-of-court identification, but, on a review of the record before us, with the witness unwilling to identify defendant in court, the method used by the State was not sufficient to permit introduction of such evidence on the basis of the precedents in this State.

For the reasons stated, the judgment of the Circuit Court of Champaign County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

STOUDER, J., concurs.

Mr. JUSTICE BARRY, dissenting:

In my view of the law, Adam's testimony as to statements made by Brown in Simpson's presence, positively identifying Simpson as a partner to the crime, was admissible against Simpson as an implied admission. The majority take a different view on the asserted grounds that the record here contains "no showing regarding Simpson's reaction to the supposed statement by Brown * * *." On the contrary, the record shows that after this incriminating statement, Brown and Simpson then proceeded in Adam's presence to open the gray metal cash box containing $135, and to

divide it evenly between themselves after giving Adams $5 in dimes. Certainly that "reaction" on the part of Simpson is a confirmation on his part of the truth of Brown's statement.

I agree that admittance to the record of this testimony of Kurata to the effect that Cuppernell, who could make no in-court identification, had in fact made a previous lineup identification of Simpson was error. That error, however, does not require a reversal in this case where there was other abundant evidence of Simpson's guilt, including Brown's positive identification, and Simpson's corroboration of that identification in splitting "the take" in the presence of Adam. *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133, 137 (1972).

I would affirm the conviction.