THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VINCENT RUBERTO, Defendant-Appellant.

Second District   No. 79-55

Opinion filed March 11, 1980.

Lance Haddix and Robert M. Hodge, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Vincent Ruberto was convicted of burglary and the possession of burglary tools following a jury trial and sentenced to three years' imprisonment, solely on the burglary charge. In his appeal he contends that the court erred in denying his motion to quash his arrest and to suppress evidence, that he was not proven guilty of the charges beyond a reasonable doubt by proper evidence, that the court erred in denying his motion for a mistrial and erred in various rulings on evidence.

Officers Corolis and Garrity of the Addison police department testified at both the hearing on defendant's motion to suppress and at trial, substantially to the same effect. Corolis testified that after receiving a report of a burglary in progress he drove to an apartment building at 1000 North Route 53. Charles Barensheer, the manager of the building, waved him down and pointed out defendant as one of the men that were involved in the burglary, saying, "That's one of them." Corolis pulled up behind defendant's car and the defendant approached him requesting that he call a tow truck because his car would not start. Corolis noticed that the entire car was in a fire lane and asked the defendant for an explanation. Defendant said that he was visiting a friend named Zanoni who lived in the building. Corolis testified that he told defendant that they were there on something else and that he would "have to stand by pending the tow."

At that time Officer Garrity arrived and was told by Barensheer that he saw defendant and another man carrying a TV set and two stereo speakers from the building to defendant's car and saw them place them in the back of the car for a short time, then return them to the vicinity of the building. Garrity testified that Corolis then radioed him to check the apartment of someone named Zanoni. Accompanied by Barensheer, Garrity found the Zanoni apartment and observed pry marks near the doorknob, which Barensheer said were recently made. Garrity entered the apartment using Barensheer's key. Barensheer also told Garrity that he had been in the apartment several days earlier and had noticed that there was a set of stereo speakers which were now gone. Garrity observed that it appeared from the absence of dust marks in two rectangular places that

the items had been taken from the apartment. He radioed Corolis to detain the defendant. Corolis testified that he did not arrest, detain, handcuff, or search defendant until the radio communication from Garrity and Garrity's return to the street.

Defendant, who did not take the stand at the trial, testified at the hearing on the motion to suppress that when Corolis arrived on the scene he asked the officer to call him a tow truck and that Corolis immediately placed him under arrest. Defendant stated that he was visiting Zanoni to see about a job and when he discovered that no one was home he returned to his car. When the car would not start, he began waving to people he saw in the apartment building to come down and call a tow truck.

Corolis testified at trial that after arresting defendant, Barensheer pointed out the speakers and TV set he had found under a stairwell 120 feet from defendant's car. One of the speakers had a chip missing. A chip was found behind defendant's vehicle which was similar in size and appearance to the missing piece, and the chip was admitted into evidence. A screwdriver and lug wrench seized from defendant's vehicle were also admitted over defense objection.

Prior to Zanoni's testimony, defense counsel made a motion *in limine* to preclude any reference that defendant attempted to sell or procure stolen merchandise on the prior day. The witness was instructed that he could detail the part of the conversation he allegedly had with the defendant relative to any property he had but that he could not reveal that defendant said that the property was stolen. Zanoni was also asked whether there was any other conversation that related to prior criminal activities or prior crimes other than the fact that defendant allegedly said he had some stolen property, and answered "No." The witness was instructed not to mention anything relating to prior crimes. Zanoni testified before the jury that defendant came to his apartment the day before the incident and asked him where he could obtain a TV set as he knew somebody who wanted to buy one. Zanoni also said that defendant mentioned that he had a stereo system but no speakers. The prosecutor then questioned the witness as to what if anything was done by the defendant at that time with respect to either the TV or the stereo speakers which had been described. The following exchange appears in the record:

"A Done to them? I showed Vincent after he told me about somebody wanting to buy a televison. I said, 'Why don't you go get one.' I showed him my small television. I said, 'Look. This works good. I paid $80.00 for that,' and I showed it to him.

Q Is that all of the conversation that you had about the T.V. or was there more?

A There was more. You see, I knew his old girl friend before and he was, you know, he just come out of jail or something. He wanted to go straight."

At this time defense counsel moved for a mistrial or a polling of the jurors both of which motions were denied. The court admonished the jury to disregard the statement about defendant's prior jail term.

We first address the denial of the motion to quash the arrest and to suppress the evidence. Defendant's principal contention is that his alleged statement to Officer Corolis that he had come to the building to see Zanoni should have been suppressed as the fruits of an illegal arrest. This argument is premised on defendant's testimony that Corolis placed him immediately under arrest at a time when the only information available to the police was a radio report of a burglary and the fact that the building manager pointed out defendant as a participant. However, this premise is based on disputed evidence and involves a matter of credibility.

■■ The trial judge could, and apparently did, give credence to the testimony of Officer Corolis that defendant was not detained before Officer Garrity and Barensheer returned from Zanoni's apartment and then possessed facts which clearly amounted to probable cause to arrest the defendant. In any event, the State's testimony would support an investigatory stop (Ill. Rev. Stat. 1977, ch. 38, par. 107—14) prior to the formal arrest based on the report of the burglary in process, the pointing out of defendant at the scene and the testimony of Officer Garrity. Garrity stated that at the time he arrived in response to the same radio dispatch that Corolis had received, and after Barensheer had made the remark that Ruberto was "one of them," he called Barensheer to the side. Barensheer told him that he had seen Ruberto and another man carry the items in question to a car, place them in back of the station wagon that was parked, leave them for a short time, then take them out of the car and carry them to the vicinity of the apartment building. Barensheer's narration to Officer Garrity together with the other circumstances support a reasonable inference of criminal activity and clearly justified further investigation. In total, there was probable cause to support the arrest and the seizure of the evidence.

Even if we were to find the detention illegal, which we do not, the investigation in progress would inevitably have led to the discovery of the evidence of defendant's guilt and therefore the evidence of the burglary would not have been suppressible. The rule of inevitable discovery is a limitation on the doctrine precluding the use of the "fruit of the poisonous tree". Cf. Wong Sun v. United States (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; People v. Shaver (1979), 77 Ill. App. 3d 709, 715.

■■ The reference by witness Zanoni to defendant's previous stay in jail was clearly inadmissible. The real question is whether the reference was

so prejudicial as to deny defendant a fair trial. We conclude that under the circumstances it was not. The emphasis on the *in limine* instruction to the witness was that he was not to mention anything about stolen property. The answer of Zanoni in court which concerned a previous stay in jail was not relevant to the issues here and brought in evidence that the defendant had committed another crime. However, we focus on the considerations that the inadmissible remark was unresponsive to the question, not elicited by the prosecutor, an objection was promptly sustained and the jury was admonished. In view of the overwhelming proof of guilt, we conclude that the statement did not prejudice a fair trial and was therefore harmless beyond a reasonable doubt. (See *People v. Precup* (1977), 50 Ill. App. 3d 23, 26. See also *People v. Fritz* (1979), 77 Ill. App. 3d 1, 5.) The cases cited by defendant are distinguishable on their facts. In *People v. Richardson* (1977), 48 Ill. App. 3d 307, a police officer testified that he had been to defendant's residence on several occasions to arrest him for "burglary and charges of this nature." We noted that the error was compounded by numerous other errors and particularly noted the failure of the trial court to admonish the jury to disregard the reference to other crimes. (48 Ill. App. 3d 307, 311.) Similarly, in *People v. Williams* (1966), 72 Ill. App. 2d 96, there was an accumulation of errors. And in *People v. Montgomery* (1971), 47 Ill. 2d 510, the intentional use by the prosecutor of a prior conviction to impeach credibility was in issue.

■■ Defendant further argues that it was reversible error to admit the screwdriver and the lug wrench into evidence. We cannot agree. The defendant admitted ownership of the car where the tools were found, and the trial court found the tools were suitable for use in prying open the door of Zanoni's apartment. The fact that defendant's companion may have owned the tools rather than the defendant is unimportant, since defendant would be linked to them under an accountability theory in any event. It is not necessary to show an item was actually used in the commission of the crime to be admissible, only that it is suitable for that purpose. *People v. Moody* (1979), 75 Ill. App. 3d 674, 680.

■■ There is also no merit in defendant's claim that his motion for a directed verdict on the charge of possession of burglary tools was improperly denied. The elements of the offense are possession of tools suitable for breaking and entering by the accused with knowledge of their character and with the intent to commit a theft. (*People v. Faginkrantz* (1960), 21 Ill. 2d 75, 80; *People v. Watson* (1974), 24 Ill. App. 3d 237, 239.) The suitability and possession of these tools is not controverted. Intent could easily be inferred by the jury in that there was ample evidence that defendant broke into Zanoni's apartment. It was therefore not error to allow this question to go to the jury.

■■ Defendant's claim that he was not proved guilty beyond a reasonable

doubt must be premised on his claim that certain of the evidence should have been suppressed. In view of our ruling on that issue, the evidence against defendant is overwhelming. Barensheer saw the defendant taking the items identified positively as Zanoni's. The chip from the speaker was found behind defendant's car.

We conclude that the defendant was proved guilty by proper evidence beyond a reasonable doubt. The judgment is affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.