THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANNY MATHES, Defendant-Appellant.—THE PEOPLE OF THE STATE OF
ILLINOIS, Plaintiff-Appellee, *v.* RANDY JORDAN *et al.*, Defendants-
Appellants.

Third District    Nos. 79-391, 79-392 cons.

Opinion filed October 15, 1981.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant Danny Mathes.

Thomas E. Cowgill, of Cirricione, Block, Krockey & Cernugel, P. C., of Joliet, for appellant Randy Jordan.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

In case No. 79-391, the defendant, Danny Mathes, was convicted of armed robbery by a Will County circuit court jury and sentenced to six years in prison. The armed robbery occurred on December 4, 1978, at approximately 8:15 p.m. at a service station in Joliet, Illinois.

In case No. 79-392, the defendants, Danny Mathes and Randy Jordan,

were each convicted of armed robbery and aiding and abetting following a jury trial in Will County circuit court, and each defendant was sentenced to concurrent nine year terms of imprisonment. This armed robbery also occurred on December 4, 1978, at approximately 9:50 p.m. at another gas station in Joliet.

On the night of the commission of both armed robberies, both defendants were on parole, Mathes for a narcotics offense, and Jordan for another robbery and bail jumping. The six-year sentence for Mathes was to be "consecutive to any sentences that the defendant may have had imposed upon him either on this date or prior to this date that he is presently serving in the Department of Corrections." The nine-year concurrent sentences for Mathes and Jordan were to be served "consecutive to any sentences that [they] may now be serving or be on parole from the Department of Corrections."

The cases were consolidated for oral argument and are consolidated for purposes of an opinion.

In case No. 79-391, defendant Mathes presents three issues for review: (1) whether his armed robbery conviction must be reversed because of an alleged improper comment by the prosecutor in closing argument; (2) whether the case must be remanded for resentencing because the trial court made no explicit statement in the record that a consecutive sentence was necessary to protect the public (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)); (3) whether the trial court's statement regarding the imposition of a consecutive sentence was so vague and uncertain as to require a new sentencing hearing.

With respect to defendant's first assignment of error, it appears that during the conclusion of the prosecutor's closing argument in rebuttal he asked the jury to return a verdict of guilty and thereby end defendant's "career" as an armed robber.

■■ Such remarks have on occasion been held to constitute reversible error. (*People v. Oden* (1960), 20 Ill. 2d 470, 170 N.E.2d 582; *People v. Fort* (1958), 14 Ill. 2d 491, 153 N.E.2d 26; *People v. Jackson* (1980), 84 Ill. App. 3d 172, 405 N.E.2d 448; *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096; *People v. McCray* (1978), 60 Ill. App. 3d 487, 377 N.E.2d 46.) However, we believe that under the totality of the facts and circumstances of the instant case, the overwhelming evidence of the defendant's guilt, such a remark, although improper, did not constitute reversible error. It is noted that the defendant Mathes made a prompt objection to the prosecutor's remark which was sustained by the trial court and the jury was instructed to disregard the same. Even though improper it is difficult to conclude that in the light of all the evidence the prosecutor's remark influenced the verdict of the jury. See *People v. Green* (1963), 27 Ill. 2d 39, 187 N.E.2d 708.

With respect to defendant's claim of error regarding the imposition of a consecutive sentence, our subsequent holding in the companion case involving both defendants shall apply equally to this portion of the opinion.

In case No. 79-392, the defendants, Mathes and Jordan, were each convicted of armed robbery and aiding and abetting and sentenced to concurrent terms of nine years imprisonment. The concurrent sentences were ordered to be served "consecutive to any sentences that [they] may now be serving or be on parole from the Department of Corrections."

On appeal defendant Mathes initially contended: (1) he was denied a fair trial where one of the complaining witnesses referred to having viewed "mug books" in violation of the court's prior order prohibiting such references; (2) the case must be remanded for resentencing because the trial court made no explicit statement in the record that a consecutive sentence was necessary to protect the public (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4(b)); (3) the trial court's statement regarding the imposition of a consecutive sentence was so vague and uncertain as to require a new sentencing hearing.

Defendant Jordan raises the same issues on appeal as well as a claim of error concerning the admission into evidence of certain clothing and an alleged improper remark by the prosecutor in closing argument which referred to him as a "dangerous man."

Mathes subsequently moved to adopt Jordan's issue with regard to the admissibility of certain clothing and the motion was allowed.

With respect to the joint claim of error by the defendants that they were denied a fair trial due to the fact that one of the prosecution witnesses referred to having viewed "mug books" in violation of the court's prior order prohibiting such references, some recitation of the factual context from which the remark evolved is necessary for an understanding of the issue now presented for review.

On the night of the armed robbery, Howard and Steven Swartz, being brothers, were present at a Clark service station in Joliet, Illinois. Both men were employees of the station. Howard was on duty, while Steven just happened to be present in order to pick up his paycheck.

Two men, whom the brothers identified in court as defendants Mathes and Jordan, entered the station. Jordan produced a pistol and ordered Howard to give him the money. Mathes pulled a knife and held it to Steven's throat. Money was obtained from both brothers and then the defendants fled the scene.

After the robbery, the police were notified and the Swartz brothers viewed several books of "mug shots" at the police station. These books contained approximately 2,200 photographs, one of which was an earlier

photograph of defendant Mathes. Neither of the Swartz brothers identi-
fied anyone from these photographs.

On December 5 the Swartz brothers were shown six photographs and
Steven identified a photograph of defendant Mathes, who had held a
knife on him, as one of the robbers. Howard was unable to identify
anyone "for sure" from the photographs, but did indicate that three
photographs "looked familiar," one of which was of the defendant
Mathes. Howard then signed two of the three photographs, neither of
which were of the defendant Mathes. Of the two photographs signed by
Howard, one was said to have "resembled" the robber with the handgun.
Howard claimed that although the photograph of the defendant Mathes
looked "familiar," his face was "too long" in the picture.

On December 6 the Swartz brothers were shown more photographs.
This time Steven was able to identify defendant Jordan as the armed
robber who had held the pistol on his brother, Howard. Howard picked
out two photographs, one of which was defendant Jordan, but did not
sign either one.

On December 8 the Swartz brothers viewed two in-person lineups.
Both Steven and Howard separately identified defendant Jordan in the
first lineup and defendant Mathes in the second as the men who robbed
them four days earlier.

Prior to trial Mathes' attorney filed a motion *in limine* which sought to
prevent the State from describing or referring to the books of photo-
graphs that were shown to the victims of the armed robbery at the Joliet
police station as either "mug shots" or "mug books." The attorney for
defendant Jordan did not file a written motion, but did orally join in
Mathes' motion and it was granted without objection. The prosecutor was
ordered to instruct the State's witnesses accordingly.

At trial Howard Swartz was called to the stand and following his
direct examination, Mathes' counsel began his cross-examination. The
witness was asked if he recalled going to the Joliet police station on the
evening of the robbery to view some photographs. Swartz responded that
he had and that the police showed him some "mug books." Mathes'
attorney asked to approach the bench, after which a side bar conference
was held. Following the side-bar conference, the court instructed the jury
to disregard the characterization by the witness of what he viewed, and
further, that they were not to draw any inferences therefrom. The trial
judge also cautioned the witness not to use that particular term again. No
objection was raised by Jordan's counsel, nor does the alleged error
appear in Jordan's post-trial motion. Moreover, there was never any
testimony that Jordan's photograph was even in the "mug books."

Defendant Jordan claims that he was prejudiced as a result of the

inadvertent reference to "mug books" that was made by one of the victims in this case during cross-examination by Mathes' attorney. He argues that certain prejudicial inferences arose from the characterization. However, due to his failure to object at the time or to raise said point in his post-trial motion, defendant Jordan has waived any error in this regard.

■■ In order for error to be brought to the attention of the reviewing court, it must be preserved. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577.) Error is preserved either by objection at the proper time or by the filing of a post-trial motion, and then if a post-trial motion is filed, any errors not set forth in the motion are deemed to be waived. (*People v. Dimond* (1977), 54 Ill. App. 3d 1036, 370 N.E.2d 686.) The record in the case at bar clearly shows that the defendant Jordan has waived the issue by failing to object either at trial or in his post-trial motion.

We believe, however, that defendant Mathes has sufficiently preserved the alleged error to entitle him to our response on the issue of whether or not reversible error occurred by reason of the reference to "mug books," which admittedly was in contravention of the court's ruling on defendant Mathes' motion *in limine*.

In the case of *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978, we have had occasion to address ourselves to the propriety of using "mug shots" for identification purposes. There the defendant had also been convicted of armed robbery and sought to challenge the admission of two different "mug shots" into evidence, one relating to an arrest for a prior offense and another resulting from the instant charge of armed robbery. We noted that despite the fact that both photographs contained a police file number, the legends had been covered over and the jury admonished to disregard the tags. We held that the photographs were properly before the jury even though "mug shot" photos implicitly contain the danger of suggesting prior criminal conduct, and that evidence of extra-indictment offenses is admissible if it tends to prove a fact in issue, such as identity.

The position of this district has been and will continue to be one which attempts to strike a balance between the probative value of admission of the "mug shot" (or as to the instant claim of error, mere reference to the viewing of "mug books")[1] as weighed against an infringement of the defendant's right to a fair trial.

■■ We believe that under the circumstances of this case, a single reference to the viewing of "mug books" instead of photograph albums by the victim of the armed robbery did not infringe the defendant's right to a fair trial, especially in view of the fact that it was the *defense*, through

---

[1] "Mug Shots" of the defendants were admitted into evidence without objection.

*cross-examination*, which elicited the testimony in a deliberate tactical attempt to impeach the witness' credibility on the issue of identification. While it is true that defense counsel sought to prevent through his motion *in limine*, any reference to "mug shots" or "mug books," the fact that he anticipated the problem due to his pursuit of the issue does not *ipso facto* establish reversible error if the problem sought to be avoided nevertheless occurs. *People v. Ruberto* (1980), 81 Ill. App. 3d 636, 401 N.E.2d 1306.

The second claim of error made initially by defendant Jordan, and later adopted by defendant Mathes, concerns the trial court's admission over objection of certain articles of clothing which the victims of the armed robbery had described as being worn by their assailants and which were later recovered from the defendants when they were arrested.

The specific allegation of error concerns the fact that while the victims of the crime testified that Mathes wore a brown vinyl or leather jacket and that Jordan wore a black leather jacket on the night of the armed robbery, Mathes was arrested the next day with a black leather jacket[2] and Jordan was found with a brown leather jacket the following day.

The arguments made by the defendants resemble the one made by the defendant in *People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848, where following the defendant's conviction for armed robbery and rape, the court rejected the defendant's contention that ordinary coats (such as the one defendant was wearing at the time of arrest) can be purchased almost anywhere, that many such coats must exist in the area, and that the coat he was wearing had no particular distinguishable feature by which an identification could have positively been made.

The court in *Fair* believed that such arguments go to the weight to be given such evidence by the trier of fact, and not to its admissibility, and with this determination we agree.

The real issue raised by the defendants here is whether or not the victims of the armed robbery had to positively identify the coats seized from the defendants by the arresting officer as the *actual* garments worn by their assailants at the time of the commission of the offense or whether their testimony describing the clothing worn by the robbers served as "a sufficient nexus" for their admission as circumstantial evidence. *People v. Smith* (1974), 18 Ill. App. 3d 859, 867, 310 N.E.2d 734, 740.

■■ The rule in Illinois is that physical evidence may be admitted where there is evidence (either direct or circumstantial) to connect the evidence to the defendant and the crime. (*People v. Ashley* (1960), 18 Ill. 2d 272,

---

[2] The victim of the armed robbery in No. 79-391 testified that the defendant, Mathes, wore a black leather jacket when he was robbed. Both robberies occurred within 90 minutes of each other.

164 N.E.2d 70, *cert. denied* (1960), 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255; *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401. Moreover, where there is evidence indicating that an accused possessed a weapon at the time of the offense, a *similar* weapon found in his possession at the time of his arrest may be admitted against him, even though not identified as the *actual* weapon used by him in the commission of the crime. (*People v. Johnson* (1966), 35 Ill. 2d 516, 221 N.E.2d 497.) The use of demonstrative circumstantial evidence when articles of clothing worn at the time of arrest by the defendant in a robbery prosecution are exhibited to the jury to demonstrate their conformity with the descriptions of the robber given by the witnesses is well recognized. McCormick, Evidence 526 (2d ed. 1972).

■■ It is also the defendant Jordan's contention that plain error was committed when the prosecutor referred to him as a "dangerous man" in his closing argument. No objection to this remark was made by the defendant; however, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) provides a limited exception to the previously discussed waiver rule. We may notice errors appearing upon the record which deprive an accused of substantial means of enjoying a fair and impartial trial (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239), or in criminal cases in which the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856). As such a prosecutorial comment might well deprive defendant Jordan of substantial means of enjoying a fair and impartial trial, we shall notice this assignment of error.

The remark that the defendant Jordan was a "dangerous man" should be judged in the context in which it was made. In closing argument, Jordan's counsel noted that when Jordan was arrested, he did not resist, nor did he have a knife or gun on him. In rebuttal, the prosecutor replied that the reason the defendant didn't resist arrest was because the evidence indicated that the arresting officers had their guns drawn, and the reason they had their guns drawn was because they were "dealing with a dangerous man." Jordan's arrest occurred two days after the armed robbery, and in view of the nature of the crime itself, any suspect about to be arrested for such an offense would undoubtedly be considered "armed and dangerous." The characterization was, therefore, not the product of the prosecutor's personal opinion of the defendant, but his attempt to explain or infer the basis for the *arresting officers'* conduct in apprehending the defendant with their weapons drawn.

■■ The remark was, therefore, an invited response to defense counsel's closing argument which had attempted to portray the defendant as a peaceful, cooperative, unarmed individual who had not resisted arrest

and was within the legitimate bounds of reasonable inferences which may be drawn from the evidence. *People v. Hill* (1977), 45 Ill. App. 3d 14, 358 N.E.2d 1350; Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981).

The defendant's final claim of error challenges the imposition of consecutive sentences in two respects. First, that the trial court failed to specifically state on the record that it believed that consecutive terms are required to protect the public from further criminal conduct (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4(b)), and second, that the statement that the defendants were to serve concurrent terms of nine years' imprisonment (for armed robbery and aiding and abetting) and that each of these sentences was to be served "consecutive to any sentences that [they] may now be serving, or be on parole from, the Department of Corrections" was so vague that the case must be remanded for a new sentencing hearing.

With respect to the defendant's contention that the case must be remanded for resentencing because the trial judge failed to specifically state in the record that "consecutive terms are required to protect the public from further criminal conduct by the defendants," we note that the statute in question provides as follows:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—4(b).

The statute only requires that the reasons given by the trial judge support the conclusion that a consecutive sentence was required in order to protect the public from any further criminal conduct by the defendant. There is nothing in the statute which would require a trial judge to specifically repeat the language found in the statute in order to express the opinion that consecutive sentences are appropriate in a given situation.

Following their convictions a presentence investigation report was compiled. Defendant Jordan's report revealed that prior to the instant convictions he had been convicted of robbery, jumping bail, criminal damage to property, resisting arrest, and disorderly conduct. Defendant Mathes had been convicted of armed robbery, burglary, battery, theft, and unlawful possession of a hypodermic needle.

In addition to defendant's prior convictions, the trial judge also reflected upon the conduct of both defendants in committing the instant offenses. He further noted that the verdicts of the jury were fully substantiated by the evidence. The trial judge went on to state that both

defendants were on parole at the time they committed the instant offenses. The trial judge next discussed the Class X legislation as it pertained to defendant Jordan.

Upon completion of his discussion of the Class X legislation and its applicability to defendant Jordan, the trial judge stated:

"Also in view that both of these men are fairly young men, they have already spent a portion of their young years in institutions either jails or penitentiaries and are facing additional time in the penitentiary. The record also recites that Mr. Mathes in one of his earlier convictions had been placed on probation in addition to some incarceration in the Will County Jail. It would appear however that Mr. Mathes and Mr. Jordan have not truly learned the errors of their ways in that their previous incarcerations have left no great impression upon them and in considering the evidence that was adduced at the trial their past convictions, it is the opinion of this court that the recommendation of the People is excessive, however, the court in considering all the elements prior to sentencing of each defendant also believes that the minimum sentence is not called for at this time."

The trial judge thereafter sentenced defendant Mathes on his convictions under counts I and IV to concurrent nine-year terms of imprisonment which would run consecutively to any sentence that he may now be serving or be on parole from the Department of Corrections. He next sentenced defendant Jordan on his convictions under counts II and III to concurrent nine-year sentences which were likewise to run consecutively to any sentence that the defendant was then presently serving in the Department of Corrections.

It is clear that the trial judge considered that it was in the best interest of society to protect it from any further criminal conduct on the part of these defendants to impose consecutive sentences in the case at bar.

■■ Although the trial judge did not delineate his remarks so as to specifically employ the phraseology of the statute in question, the transcript leaves no doubt as to the trial judge's opinion and his reasoning for so imposing consecutive sentences. (*People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.) There are of course no "magic words" that need be recited by a trial judge when imposing sentences in any given case. To require the trial judge to mechanically repeat a certain phrase in order to justify the imposition of consecutive sentences, as here advanced by defendants, would certainly be an exaltation of form over substance. The reasons set forth by the trial judge for imposing a sentence of incarceration in this case likewise supported the imposition of consecutive sentences upon the defendants.

Moving to the defendants' final claim of error, it is urged that we

remand the cause for resentencing because the trial judge, in imposing consecutive sentences, ordered that the nine-year sentences for armed robbery and aiding and abetting be served "consecutive to any sentences that [they] may now be serving, or be on parole from the Department of Corrections." Defendants urge that the imposition of these consecutive sentences, while not claimed to be excessive, is so vague and uncertain as to require a redetermination by the court.

A similar argument as that advanced in the case at bar was made and rejected in *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930. The same trial judge had there imposed three concurrent sentences for the offenses for which defendant had been convicted, but stated that they were to be served consecutively to "any sentences that the defendant may presently be serving in the Department of Corrections." (83 Ill. App. 3d 982, 989, 404 N.E.2d 930, 934.) It was first noted that reference to the presentence report is proper in order to determine what sentence a defendant is then currently serving. This court went on to hold:

> "In the case at bar the defendant, at the time of sentencing, was serving only two concurrent sentences in the Department of Corrections; thus, there could be no doubt that the sentences imposed in the present case were to be served consecutively to those two sentences." (83 Ill. App. 3d 982, 989, 404 N.E.2d 930, 935.)

See also *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385; *People v. Weaver* (1972), 8 Ill. App. 3d 299, 290 N.E.2d 691.

In the case of Mathes, the presentence report established that defendant was charged with unlawful possession of a hypodermic needle on September 18, 1976. He was convicted and received a sentence of one to three years. Defendant was released on parole in October, 1978.

As to defendant Jordan, the presentence report established that on September 14, 1976, he was arrested and charged with robbery. Thereafter defendant jumped bail, but was later apprehended and so charged. After being convicted on both charges (bail jumping and robbery), defendant was sentenced to a term of one to three years on jumping bail and two to six years for robbery. Defendant was released on parole on May 25, 1978, however, he had not been discharged from parole as of the date of the instant offenses. As a result of the instant offenses, defendant was returned to the Department of Corrections on parole violation on March 15, 1979.

██ The trial judge specifically noted that both defendants were on parole; Mathes in connection with his drug-related transaction and Jordan in connection with his robbery and bail-jumping conviction. There can be absolutely no doubt that the concurrent sentences imposed upon defendants were to be served consecutively to their respective sentences received on their prior convictions which were noted not only by the trial

judge at the sentencing hearing, but also in the presentencing report. Therefore, there can be no uncertainty in the trial judge's order imposing consecutive sentences in the instant case. *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.

For the foregoing reasons the defendant Mathes' conviction and sentence for armed robbery in No. 79-391 is hereby affirmed. In No. 79-392, the defendants' convictions and sentences for armed robbery and aiding and abetting are hereby affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.