THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE D. OLMOS, Defendant-Appellant.

First District (1st Division)   No. 78-1164

Opinion filed September 24, 1979.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James Veldman, and Robert J. Clifford, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Jose D. Olmos (defendant) was found guilty on two counts of delivery of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(c)) and unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(4)). He was sentenced to 1 to 5 years on the controlled substance charges and 364 days on the weapons charge. Defendant appeals.

Christine Kolman, an undercover police officer, testified she met defendant on September 17 or 18, 1975. Officer Kolman and defendant had a conversation concerning drugs. Defendant stated, "I have acid and I have a contact for tic [PCP]." Defendant also told her, "I can get you any amount of tic you want." The officer told defendant she had $3000 to spend on drugs. Defendant told Officer Kolman to call him back at a later time.

Officer Kolman called defendant on September 23, 1975. He told her he would get in touch with his contact for drugs and she should call him back the next day. Defendant then informed the officer she could receive two ounces of tic or PCP and between 300 and 400 "hits" of acid for $3000.

The officer again called defendant on September 24. He told her he had reached his contact and he could deliver the drugs later that day. He told Officer Kolman to meet him at a designated restaurant in Chicago at about 4 p.m.

The officer went to the restaurant as instructed. She was accompanied by six other police officers serving as backup undercover officers. Defendant arrived and told her delivery would have to be postponed another day.

Officer Kolman called defendant on September 30. He told her he had made his contact and asked her to call again the next day. Defendant told her "I talked with him and I am pretty sure I could have it for you

tomorrow." The officer called defendant on October 1. Defendant told her "he had two ounces of PCP and the three hundred forty hits of acid for $3,000." Defendant told her to meet him at the same restaurant at 4 p.m. that day.

The officer went to the State's Attorney's office to get the $3000. She photocopied each bill and signed her name on each of the copies. The copies were all time stamped. She then went to the restaurant as arranged, once again accompanied by other officers.

Defendant arrived with a previously unknown male later identified as Edward Kalous. Defendant introduced Kalous as his friend "Woody." The three sat in the restaurant for a few minutes and then left the building and got into Kalous' car. The two men sat in the front seat and the officer was in the rear. Kalous said to Officer Kolman, "If you have the money we've got the stuff." The officer replied, "Yes, I have the money." Defendant told Kalous, "Give her the stuff." Defendant then said, "We have all of the PCP and acid you can use." Kalous gave Officer Kolman two plastic bags containing a white powder and plastic medicine bottles and tinfoil packets containing pills. The white powder was identified at trial by an evidence technician as 53.54 grams of phencyclidine or PCP and the tablets as 2.44 grams of lysergic acid diethylamide or LSD.

Defendant told the officer she could check the drugs. She said, "No. I trust you." Officer Kolman placed the contraband in her slacks. Kalous then said, "Where is the money?" The officer said, "It is in the trunk of my car." Kalous said, "Go to the car with her and get the money." The officer left the car with the defendant. They walked over to her car. She took the $3000 out of a brown paper bag in the trunk and handed it to defendant. At that time, the backup team responded to a signal from Officer Kolman. They came up and made the arrest.

Officer Louis Alvizu testified he was present at the restaurant on September 24 when Officer Kolman met with defendant. He was also present on October 1. He saw Officer Kolman hand the money to defendant. He placed defendant under arrest on said date. While searching defendant he found a loaded .32-caliber revolver under defendant's left arm.

The defendant testified that, after meeting Officer Kolman, she told him she liked tic and asked if he could get her some. She called him at least 15 times. She begged him to secure drugs for her. He told her he could not get her any narcotics. He testified he did not know what "tic" was. He further testified he did not see Kalous give Officer Kolman anything on October 1. Moreover, he himself did not give anything to the officer. When he left the car with her she opened the trunk of her automobile and handed him the money and told him to give it to Kalous. He also testified that he left the officer and Kalous seated together in the

restaurant for about one minute while he went to get cream and sugar for his coffee. Defendant denied he had arranged with Kalous to deliver narcotics and denied he delivered any narcotics to Officer Kolman.

Defendant contends the trial court committed reversible error when it allowed into evidence over his objections the hearsay statements and conduct of Edward Kalous. He further contends the sentence imposed was excessive and grossly disparate from that imposed upon codefendant Kalous.

■ ■ ■ The State contends "any statement made by Edward Kalous was the statement of one conspirator during the course of and in furtherance of the conspiracy and therefore was properly admitted by the trial court as an exception to the hearsay rule." Section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—2) provides, "[a] person commits conspiracy when, with intent that an offense be committed, he agrees with another as to the commission of that offense." Many years ago this court held, "[a]s soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete. No proof of an agreement to concur in the conspiracy is necessary." *People v. Pouchot* (1912), 174 Ill. App. 1, 15.

■ Acts and declarations of one coconspirator are admissible against another coconspirator as an exception to the hearsay rule. To be admissible, "it is not necessary that a conspiracy be actually charged * * * [citations]. It is, however, necessary to show at least a *prima facie* case that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach another end by criminal means." (*People v. Simpson* (1976), 39 Ill. App. 3d 318, 321, 349 N.E.2d 441.) Admissible statements "must be in furtherance of the common design, and not merely a narrative of what has already been done." *Simpson*, 39 Ill. App. 3d 318, 321.

■ Defendant cites *Simpson* and argues that no *prima facie* showing of a conspiracy was made in the case before us. However, "[t]he existence of the conspiracy may be proved by circumstantial evidence; it can be inferred by the conduct and statements of the parties and from the surrounding circumstances of the particular occurrence." *People v. Vettese* (1978), 61 Ill. App. 3d 279, 282, 377 N.E.2d 1168, citing *People v. Bailey* (1975), 60 Ill. 2d 37, 45, 322 N.E.2d 804.

In support of the above proposition, in *People v. Jackson* (1977), 49 Ill. App. 3d 1018, 1020, 364 N.E.2d 975, *appeal denied* (1977), 66 Ill. 2d 640, this court cited *United States v. Trowery* (3d Cir. 1976), 542 F.2d 623. In *Trowery*, the defendant was convicted of distribution of heroin. The defendant was never seen in possession of heroin. However, he was seen giving something to the coconspirator. Soon thereafter, the coconspirator made a sale of heroin to a Federal agent. The court held that these events

were sufficient for admission into evidence of the statements of the coconspirator against the defendant.

In *Jackson*, this court held independent testimony of an IBI agent was sufficient to support a *prima facie* case of conspiracy. The defendant was present during the sale of cocaine but was never seen in physical possession of the substance. The statements of the coconspirator were held admissible against the defendant. *Jackson*, 49 Ill. App. 3d 1018, 1020.

In the instant case the testimony of Officer Kolman was strongly sufficient to support a *prima facie* showing of conspiracy. The defendant arranged the meeting whereby the sale of drugs occurred. Edward Kalous was in physical possession of the drugs which he delivered to the officer. Edward Kalous and the defendant were together in the car at the time of the delivery of the controlled substance to the police officer. Kalous inquired whether the officer had the money for the purchase. When she responded affirmatively, defendant instructed Kalous to give her the narcotics. Kalous handed the drugs to the officer. Defendant remarked, "*we* have all the PCP and acid you can use." (Emphasis added.) Defendant received the money from Officer Kolman which completed the purchase. Prior to this meeting, defendant continuously referred to his "contact." Defendant told Officer Kolman he was able to connect with his contact and could deliver the narcotics. He arranged a meeting to which he brought Kalous. The record demonstrates defendant acted in concert with Kalous at the time of the delivery of the contraband. By strong implication it appears that Kalous was defendant's connection or "contact" with whom he planned and effected the delivery of a controlled substance to Officer Kolman. The proof of the existence of the conspiracy and of the guilt of defendant is strong beyond reasonable doubt.

Defendant further argues that Kalous' statements were not made in "furtherance of the common design." In *Spies v. People* (1887), 122 Ill. 1, 229, 12 N.E. 865, the supreme court defined admissible statements in a conspiracy context as those "which had the effect of advising, encouraging, aiding and abetting its perpetration * * * ." Kalous' statement asking Officer Kolman if she had the money for the drug purchase because they had the "stuff" was made to and did necessarily abet the perpetration of the drug sale and was thus admissible.

Defendant argues his right to confrontation was violated by admission of Kalous' statements because conspiracy had not been proved. Assuming, *arguendo*, that the statements of Kalous did not properly fall within the above-discussed exception to the hearsay rule, their use in the instant case would constitute harmless error. As stated in *Schneble v. Florida* (1972), 405 U.S. 427, 430, 31 L. Ed. 2d 340, 92 S. Ct.

1056, when the "evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison," it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. *Schneble,* 405 U.S. 427, 430, 31 L. Ed 2d 340, 344, 92 S. Ct. 1056, 1059.

Finally, defendant contends his sentence was excessive and grossly disparate from the sentence imposed on the codefendant. Initially it must be stated "that absent an abuse of discretion by the trial court a sentence may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Additionally, "equality in sentencing * * * is not required for all participants in the same criminal act." *People v. Stambor* (1975), 33 Ill. App. 3d 324, 325-26, 337 N.E.2d 63, citing *People v. Schmidt* (1975), 25 Ill. App. 3d 1035, 1037, 324 N.E.2d 246.

This court has held that where a defendant was not an " 'equal participant' " in the commission of a crime or where the " 'nature of the participation' of the respective parties justified a difference in penalty" such sentences would be upheld upon review. *People v. Blumenthal* (1971), 1 Ill. App. 3d 189, 192, 273 N.E.2d 668, citing *People v. Steg* (1966), 69 Ill. App. 2d 188, 191, 215 N.E.2d 854. Compare *People v. Morris* (1969), 43 Ill. 2d 124, 131, 251 N.E.2d 202.

■■ In the instant action, as in *Blumenthal,* the defendant was "the mastermind behind this scheme, and the most active participant * * * ." (*Blumenthal,* 1 Ill. App. 3d 189, 192.) Defendant spoke with Officer Kolman several times concerning the narcotics transaction, he located the drugs, arranged the meeting for their delivery and physically received the money in payment for them. Additionally, defendant was armed with a revolver at the time of his arrest and was convicted of unlawful use of weapons. Based upon these facts, the nature and extent of defendant's participation in the commission of the offense justified the sentence he received. The judgments appealed from are accordingly affirmed.

Judgments affirmed.

McGLOON and O'CONNOR, JJ., concur.