THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT PATTERSON *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 79-2309, 80-197 cons.

Opinion filed September 10, 1981.—Rehearing denied October 15, 1981.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Alfred L. Petrocelli, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County,

defendants, Robert Patterson and Keith Payne, were found guilty of armed robbery and possession of a stolen vehicle. Fayella McCarthy, a co-defendant not involved in this appeal, also was found guilty of possession of a stolen vehicle.

On appeal, defendants contend: (1) they were denied a fair hearing on their motion to suppress their lineup identification because the trial court improperly excluded testimony concerning statements made to the complaining witness before the complaining witness viewed the lineup; (2) the trial court erred in denying the motion to suppress the lineup identification. Defendant Patterson additionally contends that his sentence of a 10- to 15-year prison term for armed robbery is excessive.

We affirm.

David Hill, the complaining witness, testified that shortly after midnight on September 30, 1977, while he was driving home, he noticed a woman, whom he did not know, standing on the street corner. Hill identified this woman as co-defendant McCarthy. Hill stopped his car and after exchanging a few words, he agreed to give McCarthy $20 for engaging in sexual intercourse with him. They drove straight down the street for a short distance, and then turned into an alley and parked. After having sexual relations, Hill started the car. McCarthy was in the front seat. A man approached the passenger side of the car. Hill told McCarthy not to open the car door but she did so, stating "They got guns." She left the car. The man with a gun, whom Hill identified as defendant Payne, then entered the car and sat a few inches from Hill and said, "This is a stick-up." At this time, Hill asserted, there was a lighted street light approximately 10 feet away and a lighted dome light inside the car. The inside light in the car automatically turned on when McCarthy opened the car door and it remained lighted throughout the incident. (Later on cross-examination, Hill acknowledged that he could not remember what the defendants were wearing on the night of the incident.)

Defendant Payne then ordered Hill to open his car door, which Hill did. A second man, also armed with a gun, approached Hill's side of the car and told Hill to put his head on the steering wheel. At this point in time, the man, whom Hill identified as defendant Patterson, was standing two to three inches from Hill. After Hill complied with the order, defendant Patterson took $180 from Hill's pocket. Defendant Patterson then told Hill to get out of the car and stand up, and after he did so, Patterson took Hill's wallet and house keys. At this time, defendant Patterson was standing face to face with Hill. Patterson then told Hill to run down the alley. As Hill ran into a gangway, he heard several car doors closing and car wheels spinning. Hill ran back to the alley and saw three people drive away in his car. Hill asserted that approximately 15 minutes

had passed from the time he drove into the alley with McCarthy to the time he left the alley. A "few minutes" passed between the time when the men approached him and when he ran through the alley.

The police arrived approximately 10 minutes later, and Hill told them what had happened and what had been taken. Hill asserted he had probably told police that only two men were involved. When the incident occurred, he was married.

Office Lyle May testified that on September 30, 1977, at 12:45 p.m., he investigated a suspicious persons call. When he arrived at the designated address, Mrs. Hill was on the porch. She spoke and then pointed towards a dark blue Chevrolet Chevette being driven down the street. May "flagged down" the car. At trial, May identified the three defendants as the occupants of the car. May also asserted that he recovered Hill's wallet and house keys from defendant McCarthy's purse.

Defendants McCarthy and Payne testified in their defense. McCarthy stated that she had been with Hill during the evening of September 29, 1977, and the early morning hours of September 30, 1977. After engaging in sexual intercourse and receiving a payment of $25, McCarthy obtained Hill's permission to use his car. When she returned to the hotel a few hours later, Hill had left. The next morning, she looked in the glove compartment of the car and found Hill's house keys and wallet. At 11:30 a.m., intending to return the car, McCarthy drove to Hill's home, accompanied by her roommate defendant Payne and defendant Patterson. There was no one home. As the group left, they were arrested.

McCarthy denied that she had told Officer May that she had found Hill's car in a vacant lot and was returning it for a reward. She further stated that while she was at the police station, she overheard Mrs. Hill tell Hill, "They are the two guys * * * if you don't send them to the penitentiary I am going to divorce you for every dime you have got."

Payne asserted that at the time of the alleged armed robbery, he was with friends at a bar. At 2 a.m., he returned to his friend's home and stayed there until 3:45 a.m. The following morning, he and Patterson accompanied McCarthy while she returned a car to a friend. After they drove to the friend's home, McCarthy alone went to the house and then returned to the car. She indicated that her friend was not home and that she wanted to call his place of employment. The police arrived and arrested them.

Officer Brian Rybka also testified as a defense witness. During the early hours, on September 30, 1977, he spoke with Hill about the incident. Hill described his assailants as two dark-complected male Negroes, 20 to 25 years of age, who were five feet eight inches tall and weighed 160 pounds. Rybka stated that since Hill was very upset, he was unable to

describe the clothing or physical characteristics of his assailants. Hill also did not tell Rybka what the lighting conditions were during the incident. He also recalled that Hill had been drinking.

Several witnesses were called in rebuttal. The testimony of two witnesses concerned the periods of time Payne worked for Bell and Howell Company. Officer May testified that when he stopped a vehicle belonging to Hill and questioned the three defendants, McCarthy told him she found the car in a vacant lot near her home. She also found a wallet and coat in the car and thought if she returned the car she would receive a reward. Defendants Payne and Patterson agreed with her account. When cross-examined, Officer May admitted that the police report he had prepared did not include any statement given by McCarthy.

Opinion

I

Defendants first contend that they were denied a fair hearing on their motion to suppress their lineup identification because the trial court erroneously excluded Hill's testimony concerning the substance of his conversations with his wife and police. Defendants also contend their motion to suppress the lineup identification should have been granted because the lineup procedure, in which of five men only Payne and Patterson were not handcuffed, was unduly suggestive.

We agree that Hill's testimony concerning conversations with his wife and police was admissible to show whether they influenced Hill's subsequent identification. (See *People v. Canamore* (1980), 88 Ill. App. 3d 639, 411 N.E.2d 292.) We also agree the lineup procedure was somewhat suggestive. However, in our view it is unnecessary to remand the cause for a new hearing on the motion to suppress because the record demonstrates that there is a reliable basis for Hill's in-court identification which is independent of the lineup identification.

As in *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861, the crux of the issue here is whether Hill's in-court identification of defendants was based on an out-of-court line-up identification which was so impermissibly suggestive as to create a substantial risk of irreparable misidentification. At the trial, here, as in *McTush*, both the State and the defense asked Hill questions about his identification of defendants on the night of the incident and no questions were asked of Hill concerning his out-of-court identification of defendants. The *McTush* court noted the supreme court's rationale set forth in *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, that despite the hazards of such an identification, those hazards are substantially lessened by the opportunity afforded to defense counsel to cross-examine an eyewitness at trial and thereby expose any potential for misidentification.

Consequently, once it is established that the pretrial confrontation was impermissibly suggestive, the State may "[o]vercome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' [Citation.]" (81 Ill. 2d 513, 520, 410 N.E.2d 861, 865.) The concern is whether "[A]n independent origin exists to establish separate reliability for [Hill's] in-court identification testimony, or, negatively stated, whether the suggestive procedure created a substantial risk of misidentification, without a sufficient, separate basis of reliability. [Citation.]" (81 Ill. 2d 513, 521, 410 N.E.2d 861, 865.) The factors to be considered in evaluating the likelihood of misidentification include the following: (1) the opportunity of the witness to view the alleged offender at the time of the crime; (2) the witness' degree of attention; (3) the accurancy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the confrontation; (5) the length of time between the crime and the confrontation; and (6) any acquaintance with the suspect at the time of the crime. *People v. McTush.*

Applying these factors to the case here, we believe that Hill viewed the defendants under circumstances which permitted him, at a later time, to positively identify them. Hill testified that a nearby street light and the light inside his car illuminated the area where he observed defendants. Hill also testified that he observed both defendants face to face for a few minutes.

Further, Hill's detailed description of events indicates he was closely attentive to the enactment of the crime. The fact that he observed both defendants who were armed while one was in the car with him and the other was standing next to him supports the inference that Hill was fearfully watching them and "[v]iewed [the scene] with the close attention accorded unusual occurrences." (*People v. McTush* (1980), 81 Ill. 2d 513, 522, 410 N.E.2d 861, 866.) Hill also positively and consistently identified defendants, first, from a lineup of five men and second, during trial. The length of time between the crime and the lineup confrontation, one day, clearly was not unduly long so as to mar the strength of the identification.

■■ Finally, although Hill was unable to describe the defendants' clothing on the night of the incident, he was able to estimate their height and weight. We do not believe that Hill's inability to describe defendants' attire materially diminishes the reliability of the identification. In our view, an "informed judgment" (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 513, 250 N.E.2d 152, 155) is inferable from the record that an independent origin for Hill's in-court identification has been clearly and convincingly established so as to assuage any risk of misidentification.

(*People v. Mctush.*) Accordingly, there is no need to remand to the circuit court for an evidentiary hearing regarding an independent origin of reliability for Hill's in-court identification.

## II

Defendant Patterson next contends that his prison sentence of 10 to 15 years for armed robbery and possession of a stolen vehicle is excessive. Defendant argues that the sentence is excessive when viewed on its own and when compared to co-defendant Payne's prison sentence of four years to four years and one day for the same offenses. We disagree.

Patterson had a 1970 felony conviction for voluntary manslaughter and two misdemeanor convictions. Payne had a 1973 misdemeanor battery conviction and a September 1977 misdemeanor theft conviction for which he was placed on probation. Payne was on probation at the time of the offense. Defendant Patterson concedes that his criminal record may warrant some disparity between his and Payne's sentences, but the "huge difference" is unjustifiable since the State claimed both defendants were equal participants.

■■ Defendant correctly notes that in the case of co-defendants, the law requires that defendants similarly situated should not receive grossly disparate sentences. However, equality in sentencing is not required for all participants in the same crime. (*People v. Olmos* (1979), 77 Ill. App. 3d 287, 395 N.E.2d 968.) Actual differences in the character and history of co-defendants and their degree of culpability are factors for the trial court's consideration in determining the proper punishment. (*People v. Olmos.*) Sentencing is a matter for the sound discretion of the trial court, and absent an abuse of discretion, the trial court's decision will not be reversed on appeal. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

In *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545, the Illinois Supreme Court affirmed its earlier ruling in *People v. Perruquet* that under Supreme Court Rule 615(b)(4), which provides that a reviewing court may reduce the punishment imposed by the trial court, "the standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether this discretion was abused." Here, in accordance with section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(c)), the trial court specified the reasons for the sentence it imposed. The trial court noted the factors in mitigation and aggravation and emphasized that defendant had failed to learn from his first prison sentence for voluntary manslaughter. The sentence imposed, in the trial court's view, was one which "[would] indicate to him the seriousness of this crime. That will

take into consideration the fact that in an earlier offense, for taking a man's life, he didn't learn * * *. [Sic.]"

■■ In our view, the trial court properly exercised its discretion. Defendant Patterson's criminal record admittedly is significantly more serious than that of co-defendant Payne. The disparity between the two sentences is not so gross so as to constitute an abuse of discretion. See *People v. Meints* (1976), 42 Ill. App. 3d 25, 356 N.E.2d 386.

Accordingly, for the reasons noted, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.