THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM A. SAUER, Defendant-Appellant.

Second District   No. 2—87—1119

Opinion filed December 28, 1988.

John F. Donahue and Joseph T. Bugos, both of Law Offices of John F.

Donahue, of Lisle, and Glenn M. Sowa, of Law Offices of John F. Donahue, of Geneva, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, John X. Breslin, and Gary F. Gnidovec, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, William Sauer, appeals from his jury conviction of two counts of unlawful delivery of 30 grams or more of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)). He was sentenced to concurrent terms of 8½ years' imprisonment on each count, and also fined $42,620 on count I, and $900,000 on count II.

Defendant raises six issues for appeal: (1) whether the evidence proved defendant guilty beyond a reasonable doubt; (2) whether the requirements to admit coconspirator's hearsay statements were satisfied; (3) whether there was probable cause to arrest defendant; (4) whether evidence of prior drug sales should have been admitted; (5) whether the prosecutor's cross-examination of defendant concerning post-arrest statements violated due process; (6) whether defendant was denied due process as a result of the prosecutor's improper remarks at closing argument. For the reasons set forth below, we affirm.

The evidence at trial is summarized as follows. At about 8 p.m. on October 2, 1986, drug agents for the Du Page Metropolitan Enforcement Group observed defendant and William Mueller parked in a white Oldsmobile outside George Rantis' apartment. Rantis was working with the drug agents after being arrested the day before for illegal possession of cocaine with intent to deliver. He arranged earlier in the day to purchase cocaine from Mueller. According to the testimony of Agent Michael Sullivan, the defendant and Mueller engaged in a conversation just before Mueller exited the Oldsmobile. Mueller then grabbed a cardboard box from the front seat of the car. After Mueller entered the apartment building, defendant slid over to the driver's side of the car and moved it closer to the building's entrance. He left the car running and dimmed the lights. Meanwhile in Rantis' apartment, Mueller revealed a bag of cocaine that had been in a gym bag inside the box. Mueller gave Rantis the cocaine, and Rantis gave Mueller $2,000. The two discussed making a larger cocaine deal where they would split the profits; then Mueller left. He drove away with defendant as a passenger. No arrest was made at this time.

On the following day, October 3, 1986, Rantis, at the request of

the agents, arranged to buy at least a kilo of cocaine from Mueller. The agents recorded several phone conversations between Rantis and Mueller. A tape of the conversations was submitted to the jury. Rantis testified that Mueller talked in code using real estate terms for drug terms and referred to the defendant in his conversations by his nickname "Grape." In one conversation, Mueller told Rantis to meet him at the gas station by the Falco's Pizza on Route 83. Mueller stated that he would be in one car and the "Grape" would be in another.

Agent James O'Brien drove with Rantis to the gas station. O'Brien observed Mueller standing near a telephone at the gas station parking lot and defendant standing near a Toyota located in Falco's parking lot. With Agent O'Brien staying behind, Rantis met with Mueller and walked back to the rear of the Toyota. There is some disagreement about what happened next. O'Brien testified that he believed Mueller opened the trunk, though he did not see him insert a key to open it. He testified that he did not see defendant at this time. Rantis testified that defendant got out of the Toyota and opened the trunk. Agent Charles Dvorak testified that he saw defendant standing at the back of the car near Rantis and Mueller when the trunk was opened, though he did not see who opened the trunk. After the trunk was opened, Rantis grabbed a gym bag and shaving bag and brought it back to O'Brien. Inside were three kilos of cocaine, weighing approximately six pounds. O'Brien gave the arrest signal; defendant and Mueller were standing in front of the white Oldsmobile talking when they were arrested.

Over defendant's objection, the State also presented evidence of two other drug transactions involving defendant. Rantis testified that in August 1986, Mueller and defendant picked him up and proceeded to Skip Anderson's house. On the way, Rantis observed a gym bag. He was told by Mueller that they were going by Anderson's house because Mueller and the defendant had a kilo for him. Defendant then stated that he did not want to deal with Skip because Skip was always complaining. When they arrived at Anderson's, Mueller and defendant brought the gym bag and met Anderson in his garage. Rantis did not go with them. When they came out a few minutes later, defendant was holding cash tied with rubber bands.

Rantis also testified that on September 27 or 28, 1986, defendant and Mueller came to Rantis' apartment. Defendant brought Rantis a package of cocaine. Rantis asked Mueller if he should keep the cocaine, and Mueller replied yes. Rantis explained that he did not pay for the cocaine at this time because he had an arrangement with Mueller where he would pay Mueller for what he sold.

Defendant testified that he was not involved in any drug sales, that Mueller was a companion and legitimate business partner in a real estate construction business that also included Rantis, and that he did not know that Mueller was selling cocaine on October 2 and 3. On October 2, 1986, he drove with Mueller to Rantis' apartment, but he never saw a box in the car and he never moved the car forward. On October 3, he had no knowledge that cocaine was inside the bags in the trunk of the Toyota. On that day, Mueller told him he could use his locker at the Chalet Health Club and asked him to bring back a gym bag he had in the locker. Mueller also asked defendant if he would drive his girlfriend's Toyota to the club because the battery needed charging. Defendant testified that he did not pick up the gym bag from the club, though he did take Mueller's shaving kit. Then, while driving from the health club, defendant passed Mueller driving the other way. The two stopped, and Mueller asked defendant to go back to the club to get the gym bag. Defendant went back to the club to get the bag and found Mueller in the health club parking lot. Mueller told defendant that he noticed the Toyota had a headlight out. At Mueller's request, defendant followed Mueller to the gas station on Route 83 to fix the headlight.

As for September 27 or 28, defendant testified that he accompanied Mueller to Rantis' apartment and saw Rantis put away a scale and a plastic bag with white powder. Then, Rantis gave Mueller a large amount of money. Defendant testified that he later voiced his disapproval to Mueller. As for the trip to Anderson's, defendant testified that he went to Anderson's in August 1986 to install a water heater. He went into the garage only to look at Anderson's antique car.

■ Defendant first contends that the evidence is insufficient to support his guilt under accountability. Whether defendant was proved guilty is a question for the trier of fact, and its determination will not be reversed unless the evidence is so palpably contrary to the verdict, or so improbable as to raise a reasonable doubt of guilt. *People v. Birge* (1985), 137 Ill. App. 3d 781, 791.

■ The State was required to prove beyond a reasonable doubt that defendant knowingly delivered or possessed with intent to deliver 30 grams or more of a substance containing cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)). For defendant to be accountable for the conduct of another, the State must prove beyond a reasonable doubt that: (1) defendant elicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation must have taken place either before or during com-

mission of the offense; and (3) it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 570; *People v. Saldana* (1986), 146 Ill. App. 3d 328, 334-35.) Mere presence at the scene of a crime, even with knowledge that a crime is being committed, or negative acquiescence thereto, is not enough to make a person a principal; however, it is unnecessary to prove defendant participated in the commission of the act which constituted the offense. *Schlig*, 120 Ill. App. 3d at 570; *Saldana*, 146 Ill. App. 3d at 335.

■■ ■ We find that there was sufficient evidence to support the jury's verdict. When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) The evidence supports a determination that defendant aided Mueller October 2 by acting as a lookout in the car, and that he had the concurrent specific intent to facilitate the delivery of cocaine. The evidence supports a determination that on October 3 defendant had the specific intent to facilitate the sale of cocaine and aided Mueller by picking up the cocaine and delivering it to the site for the deal. The verdicts are supported not only by the evidence from events of October 2 and 3, but also by the evidence of other drug transactions involving defendant. We note also that a jury may consider the reasonableness of the defense offered and may reject that evidence in light of other facts before it. *Saldana*, 146 Ill. App. 3d at 335.

Defendant's second issue contends that the admission of statements by Mueller, an out of court declarant, was reversible error because the State failed to establish the coconspirator's exception to the hearsay rule.

■ In *People v. Abrego* (1986), 142 Ill. App. 3d 973, 983, this court reviewed the coconspirator declaration exception to the hearsay rule:

> "Under this exception, the acts and declarations of a co-conspirator made in furtherance of the conspiracy are admissible against a defendant even when they are made out of the defendant's presence. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 945, 455 N.E.2d 733.) In order to avail itself of the coconspirator exception, it is not necessary for the State to charge the crime of conspiracy; the State is merely required to establish a *prima facie* case by independent evidence that two or more persons were engaged in a common plan to accomplish

a criminal goal or to reach another end by criminal means. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 945, 455 N.E.2d 733; *People v. Olmos* (1979), 77 Ill. App. 3d 287, 291, 395 N.E.2d 968.) The existence of the agreement, which is the essence of a conspiracy, need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 945, 455 N.E.2d 733; *People v. Olmos* (1979), 77 Ill. App. 3d 287, 291, 395 N.E.2d 968.)"

Defendant contends that the State failed to present independent evidence to establish a *prima facie* case of conspiracy. We disagree. In this case, the independent facts include the following: (1) August 1986, defendant and Mueller brought a gym bag into a garage and met Skip Anderson. Defendant returned holding cash wrapped in rubber bands. Before the meeting defendant said he did not want to deal with Skip because he always complained. (2) September 1986, defendant and Mueller visited Rantis and defendant left a bag of cocaine. (3) October 2, 1986, defendant and Mueller drove to Rantis' apartment. They had a conversation. Mueller removed a box from the car that contained a gym bag with cocaine. Defendant pulled Mueller's car up closer to the apartment building and dimmed the lights. (4) October 3, 1986, defendant put a gym bag and a shaving bag from the Chalet health club into the trunk of a maroon Toyota. The bags contained three kilos or about six pounds of cocaine. He drove the Toyota to Falco's Pizza parking lot. He opened the trunk for Rantis, who pulled out two bags that contained cocaine. Defendant was arrested while standing next to Mueller engaged in conversation.

■ We find this is sufficient evidence to establish a *prima facie* case of conspiracy. The evidence shows a continual relationship between defendant and Mueller that reflects an agreement to carry out the larger scheme of trafficking illicit drugs. Our finding is similar to two recent second district cases that have held that a *prima facie* case of conspiracy was established by independent evidence: *People v. Edwards* (1984), 128 Ill. App. 3d 993, and *People v. Saldana* (1986), 146 Ill. App. 3d 328.

In *Edwards*, agents staking out Michael Sarfino's house observed defendant drive up to Sarfino's in a white van and carry a brown satchel into the house. Then defendant and Sarfino left the house and met with agents at a hotel parking lot. Sarfino inspected an amount of money and told the agents to follow him to his house for the "stuff." At Sarfino's, Sarfino got inside the agents' car and removed

from his pants a large package of cocaine wrapped in a newspaper. Defendant was not in the car when the cocaine was delivered. The brown satchel was found empty near the car. *Edwards*, 128 Ill. App. 3d at 996.

In *Saldana*, Daniel Quinn and an undercover police officer drove to a Dairy Queen in a jeep. Quinn was observed by another officer as he walked to a green Maverick to talk with the defendant sitting inside the car. Then Quinn returned to the jeep. Then, he went back to the Maverick, got in the car, and drove away. The car went around the block and returned. As Quinn exited the car, he was seen rearranging his pants and stuffing a white object into them. Quinn walked back to the jeep and pulled up his shirt to reveal LSD which he exchanged for cash. *Saldana*, 146 Ill. App. 3d at 330-31.

In the instant case, as in the above two cases, there is no direct evidence of an agreement to sell narcotics; however, certain facts, such as defendant's direct contact with the seller just before the sales, defendant's presence at or near the place of sales, and defendant's possession and transportation of the cocaine just before the sales, sufficiently establish a *prima facie* case that defendant and Mueller agreed to sell narcotics.

We also find the third district case *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 623, distinguishable. In that case, there was evidence of only one drug transaction, and that evidence was insufficient to show that the defendant and the alleged coconspirator had an agreement to sell narcotics. (*Deatherage*, 122 Ill. App. 3d at 623.) Unlike *Deatherage*, we have evidence of four drug transactions that shows defendant and Mueller working together.

Defendant also contends that the four narcotics transactions introduced by the State make up four separate and disparate conspiracies rather than one conspiracy. Defendant contends that each drug deal represents a separate, completed conspiracy. Therefore, defendant contends, the admission of evidence of past conspiracies was error under the general rule that prior bad acts are inadmissible, and furthermore, the admission of coconspirator statements concerning these acts was error.

We have not found, nor have the parties cited, any State case law that directly addresses this issue; however, the Seventh Circuit has recently addressed this issue.

In *United States v. Napue* (7th Cir. 1987), 834 F.2d 1311, the court held that there was one ongoing conspiracy to distribute cocaine and heroin from 1976 to 1982. The court found that no single deal represented an end in itself, but each was part of a broader agree-

ment between the defendant and his confederates to coordinate in different ways and at different times the distribution of drugs. (*Napue*, 834 F.2d at 1332.) The court stated:

"[I]t is the nature and the scope of the agreement that is the determinative factor in distinguishing between single and multiple conspiracies. [Citations.] *** Separate conspiracies exist when each of the conspirator's agreements has its own end, and each transaction constitutes an end in itself. [Citations.] If, on the other hand, the agreements between the conspirators represent stages or different functions to be performed in the formulation of a larger scheme, the object of which is to effectuate a single unlawful result, then there is a single conspiracy." *Napue*, 834 F.2d at 1332.

■ We find the reasoning of the Seventh Circuit equally applicable to conspiracy under Illinois law. Applying that reasoning, we hold that the State has established a *prima facie* case of one ongoing conspiracy. The evidence shows defendant and Mueller making four cocaine deliveries within two months. Rantis testified that Mueller devised a code to discuss drug deals over the phone. On three occasions the drugs were carried in a gym bag. There was also testimony that defendant complained about dealing with Anderson because he was always complaining. From this evidence, it can be inferred that the defendant and Mueller had a common single agreement to carry out the larger scheme of buying and distributing illicit drugs.

■ Defendant's third issue contends that the trial court erred in denying defendant's motion to suppress evidence derived from his warrantless arrest that was without probable cause. Probable cause for an arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178.) Although a mere suspicion that the person arrested has committed an offense provides an insufficient basis for the arrest, evidence sufficient to convict is not required. (*Lippert*, 89 Ill. 2d at 178.) With respect to a motion to suppress evidence based on a lack of probable cause to arrest, the burden of proof is on defendant. (*People v. Bajt* (1983), 113 Ill. App. 3d 459, 464.) The trial judge's decision will be overturned only if it is manifestly erroneous. *People v. Hoskins* (1984), 101 Ill. 2d 209, 212.

■ Considering only the evidence produced at the suppression hearing, the trial court's finding of probable cause was proper. Agent O'Brien testified that defendant was seen in Mueller's car on October

2 and that he had pulled the car closer to the entrance. On October 3, O'Brien learned that Mueller said defendant would pick up the cocaine for Mueller and drive it to the location for the deal. At the location, defendant was seen standing next to a maroon Toyota that had the cocaine in the trunk. Defendant and Mueller were standing near each other talking before they were arrested. These facts clearly warrant a finding of probable cause.

Defendant next contends that it was error for the trial court to allow into testimony events of past narcotics transactions involving the defendant. Evidence of other offenses is inadmissible except where the other offense is part of the *res gestae* of the offense charged or it helps to prove motive, intent, premeditation, guilty knowledge or a common plan or scheme. (*People v. Mancl* (1977), 55 Ill. App. 3d 41, 44.) Where defendant's defense is that he has no knowledge or control of the narcotics, the evidence of prior sales of narcotics is admissible to refute defendant's contention. *People v. Wilson* (1970), 46 Ill. 2d 376, 381.

■■ Here, defendant's entire defense was that he had no knowledge of the drug transactions that occurred. He claimed that his relationship with Mueller was as an innocent friend and partner in a new business. Given this defense, evidence of prior narcotics deliveries involving defendant was clearly admissible to refute defendant's contention.

Defendant also contends that evidence of other narcotics deliveries should not have been admitted because the evidence did not establish that a crime was actually committed. Although the court may allow evidence of other crimes to establish defendant's knowledge or intent, the evidence must demonstrate that a crime was actually committed and the defendant committed it. (*People v. Miller* (1977), 55 Ill. App. 3d 421, 426.) However, the quantum of proof of other offenses need not be that of beyond a reasonable doubt. *People v. Smith* (1972), 3 Ill. App. 3d 958, 961.

■■ We find the evidence going to the prior transactions in August and September 1986, which includes coconspirator hearsay statements made by Mueller, sufficient to show defendant as an active participant in illegal drug transactions.

■■ In his fifth issue, defendant contends that the prosecutor's cross-examination of defendant was improper because it amounted to a comment of defendant's post-arrest silence. Defendant contends that the prosecutor violated *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, in attempting to impeach defendant by inquiring into omissions in defendant's post-arrest statement when

there were no inconsistencies in defendant's testimony at trial. Because defendant's brief fails to describe a single instance where the prosecutor violated *Doyle* and fails to cite any instance in the record, we decline to address this issue. Defendant has failed to comply with Supreme Court Rule 341(e)(7), which provides that arguments made in support of issues raised in appeal "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." (107 Ill. 2d R. 341(e)(7).) Defendant cannot make a general assertion of error without pointing out specific instances in the record to support the general assertion of error and still expect the reviewing court to determine whether his contention is meritorious. *People v. Ramirez* (1983), 98 Ill. 2d 439, 472.

Defendant's final issue contends that several of the remarks made by the prosecutor in closing statement constituted error and were so prejudicial as to warrant reversal. Several of the alleged errors, however, were not objected to at trial. It is fundamental to our adversarial system that counsel object to errors at trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576.) Errors not objected to at trial will be waived absent plain error affecting substantial rights. (*Carlson*, 79 Ill. 2d at 576.) Since we find that none of the alleged errors fall within the plain error exception, we review only those comments objected to at trial. We note that each case of this kind must be decided upon its own facts. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523.) Furthermore, complained-of comments must be placed within their appropriate context considering the prosecutor's entire argument. *People v. Neumann* (1986), 148 Ill. App. 3d 362, 374.

Defendant first contends it was error for the prosecutor to refer to cocaine shipments from Columbia. The prosecutor made reference to drugs from Columbia on three occasions; however, there was only one objection. At any rate, though these statements were inflammatory and lacked a basis in fact, they were completely tangential to the issues and not so inflammatory as to cause substantial prejudice. "[I]mproper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused." *People v. Tiller* (1982), 94 Ill. 2d 303, 321.

Defendant also contends that the prosecutor improperly characterized defense counsel's case as a lie and improperly referred to defendant as a liar. Defendant did not object to any such characterizations; thus it is waived. Defendant did object to the prosecutor rhetorically asking if the police were liars. Defendant contends his objection to the rhetorical question is enough to preserve all his objections to the references of lying. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132,

137 (once an objection is made and a ruling obtained, it need not be repeated to preserve the point for review).) That argument is not persuasive here where the word "lie" was used several times before counsel objected. Regardless, though we do not condone the prosecutor's repeated use of such an inflammatory word, we do not find that the prosecutor's remarks resulted in substantial prejudice to the defendant. Nor do we find that the cumulative effect of all the improper prosecutorial remarks denied defendant a fair trial.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.